[Civ. No. 58043. Second Dist., Div. Five. Nov. 6, 1980.]

J. DOUGLAS McNAIR, Plaintiff and Appellant, v.
PASADENA HOSPITAL ASSOCIATION, LTD., et al.,
Defendants and Respondents.

**COUNSEL**

Hill, Farrer & Burrill, Todd M. Sloan and Scott L. Gilmore for Plaintiff and Appellant.

Home & Clifford, Richard R. Clifford, Gibson, Dunn & Crutcher, G. Edward Fitzgerald, Bruce A. Toor and James C. Opel for Defendants and Respondents.

**OPINION**

**MARGOLIS, J.*—**In this appeal we are asked to decide whether the rule enunciated in *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410], (sometimes referred to as *Westlake*) that upon the termination by a hospital of a doctor's staff privileges, the doctor may not sue the hospital or the indi-

---

*Assigned by the Chairperson of the Judicial Council.

viduals who were involved in the decision in tort without first having the action of the hospital overturned in a mandamus proceeding is applicable where, as here, less than a complete termination of privileges is imposed. We have found no authority which deals squarely with this question.

Appellant (sometimes called McNair) is a cardiologist who was on the staff of respondent hospital (sometimes called Huntington). His primary activity was to perform heart catheterizations. In late 1976, he was informed that an investigation was to be made of his performance at the hospital. Hearings were conducted respecting specific cases of McNair's care and treatment of patients.

Ultimately, the hospital ordered that there be:

1. A prospective audit of appellant's charts for a period of six months;

2. A six-month retrospective audit of McNair's charts to evaluate the quality of his history-taking and physical examinations; and

3. Observation of McNair's performance for six months by a doctor selected by McNair from a group of four doctors.

McNair resisted this order at further hearings conducted by the executive committee of the medical staff, the conference committee of the medical staff, and an appellate review committee of the governing body of the hospital. He was represented throughout by counsel.

He then filed an action seeking the issuance of a writ of administrative mandamus. The petition was denied, the judge declaring "...the decision made by respondent does not constitute a material impairment of Petitioner's privileges to practice at the Huntington Memorial Hospital and, therefore, there is nothing in the record appropriate for judicial review by this Court." There was no appeal from that order.

Appellant then filed a lawsuit seeking damages. In the first amended complaint six causes of action were alleged as follows:

| Cause of Action | Title | Defendants |
|---|---|---|
| 1 | Tortious infliction of emotional distress. | All |
| 2 | Abuse of administrative process. | All |
| 3 | Defamation. | All |
| 4 | Defamation. | Pasadena Hospital Assn., Ltd. and Kipnis |
| 5 | Tortious interference with prospective advantage. | Getzen |
| 6 | Defamation. | Getzen |

Pasadena Hospital Association, Ltd. is a corporation which does business as the Huntington Memorial Hospital. Defendants Swan, Kipnis and Getzen are physicians associated with Huntington; they are said to be employees of Huntington who were involved in the making of the order for the audit and observation of McNair.

The trial judge sustained demurrers to the first and second causes of action without leave to amend and to the remaining four causes of action with leave. Appellant did not amend and judgment was entered dismissing the action.

In *Westlake*, our Supreme Court held that a doctor whose staff privileges had been terminated could not bring an action in tort for damages against the hospital or the individuals who participated in the decision without first having that decision set aside in a separate mandamus action. ■ Appellant argues that *Westlake* does not apply where, as here, there is less than a complete termination of privileges. Respondents urge that the same policies that resulted in the rule of the *Westlake* case are present here and necessitate the same result. We agree with respondents.

In *Westlake*, the court held that although malicious prosecution actions are only roughly analogous to actions in which damages are sought for allegedly maliciously initiated administrative proceedings,

the general policy requiring a "favorable determination" in the former should apply to the latter. "[S]o long as such a quasi-judicial decision is not set aside through appropriate review procedures the decision has the effect of establishing the propriety of the hospital's action." (17 Cal.3d at p. 484.)

The court held further that this "requirement accords a proper respect to an association's quasi-judicial procedure, precluding an aggrieved party from circumventing the established avenue of mandamus review. In addition, this result will simplify court procedures by providing a uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions." (17 Cal.3d at p. 484.)

Lastly, the court stated that "this procedure affords a justified measure of protection to the individuals who take on, often without remuneration, the difficult, time-consuming and socially important task of policing medical personnel. Because such individuals remain ultimately subject to suit, the procedure outlined above does not conflict with the legislative decision to afford only a conditional privilege to these decision-makers (see Civ. Code, § 43.7); once a court determines in a mandamus proceeding that an association's quasi-judicial decision cannot stand, either because of a substantive or procedural defect, the prevailing party is entitled to initiate a tort action against the hospital and its board or committee members or staff." (17 Cal.3d at p. 484.)

The instant case, unlike *Westlake*, presents the situation of an order for a limited audit and observation of a physician member of a hospital staff, a much milder and less drastic action than termination. Appellant argues that where, as here, a decision much less drastic than termination is made, the prerequisite "favorable determination" should not be required. He asserts that since mandamus is not available because there was not a material impairment of his privileges he should be allowed to proceed without satisfying the requirement of *Westlake*.

Thus, appellant would have the salutary purposes and results of *Westlake* applicable to the drastic decision to terminate privileges but not to the relatively mild order for a limited audit and observation. This seems to us to be irreconcilable with the reasons and objectives which led to the result in *Westlake*. There is no basis for so distinguishing. The rationale of *Westlake* compels its applicability here.

We observe that the fact that persons in the position of appellant might not be able to proceed in suits for damages does not compel a different result. The requirement of a "favorable determination" has long operated to prevent some suits for malicious prosecution from reaching a hearing on the merits. *Westlake*, as we have seen, operates similarly in the situation of a termination of staff privileges. So, the fact that appellant will be effectively barred from proceeding against respondents is per se no reason to support a contrary result here.

There is an additional reason that supports our decision. A contrary result would leave hospitals and persons who serve on committees which police medical personnel vulnerable to an immediate suit for damages by a disgruntled physician. This might provide them with encouragement to terminate staff privileges completely rather than impose some lesser discipline which might be both appropriate and sufficient. We don't wish to provide that encouragement.[1]

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

---

[1] *Volpicelli v. Jared Sydney Torrance Memorial Hosp.* (1980) 109 Cal.App.3d 242 [167 Cal.Rptr. 610], was cited by counsel during oral argument. We find no inconsistency between that opinion and this one.